# John Kuhns, Plff. in Err., *v.* John Fennell et al.

**Where** a deed calls for a line upon the ground, such line will prevail over courses and distances. But this rule does not apply where the line is not called for.

Where land is held adversely, hostilely and continuously up to a marked line for the period required by the statute of limitations, title is acquired by adverse possession.

Where the land adjoining the line was woodland, the mere occasional cutting of timber thereon is not a sufficient adverse holding to confer title.

(Decided October 29, 1888.)

Error to the Court of Common Pleas of Westmoreland County. Affirmed.

This was an action of ejectment for 8 acres of land. In 1804 Philip Kuhns became the owner of two tracts of land. On February 28, 1822, he conveyed to Jacob Kuhns, the father of the plaintiff, 236 acres of this land, and on May 29, 1849, conveyed to John Kuhns 106 acres. Jacob Kuhns died in February, 1860, and his real estate, being the balance of his purchase, was brought into partition, and John Kuhns, his son, took it at the appraised value.

Adam Bowman, the father of the defendant, became the owner of the adjoining portion of the Philip Kuhns's purchase by deed of the same date as that of Jacob Kuhns, each deed calling for 236 acres and each deed having the same consideration money mentioned in it. A. D. Bowman, the defendant, became the owner of the land conveyed to his father by virtue of a conveyance to him.

The question in dispute is as to the true division line between the property. The original survey making the division of the land was made by General Murry in 1813, who furnished a draft of the two tracts, which, according to the testimony of the surveyors, fitted when laid together. Both of the deeds referred to the draft.

It further appeared that neither the deed of the plaintiff nor the Murry draft would give the land to the plaintiff, but evidence was offered to show that a well-marked line appeared upon

the ground, corresponding in age with the survey, which would sustain the contention of the plaintiff.

Evidence was offered to show that the plaintiff and his predecessors in title had used the woodland up to the line upon the ground for farm purposes from 1822. It was also contended that the defendant was estopped by his acts from claiming beyond the division line contended for by the plaintiff.

The court, HUNTER, J., charged the jury in part as follows:

Certain legal propositions grow out of this dispute, and among them we may name three as leading ones. First, where there are discrepancies or inaccuracies in the description of land, by the courses and distances—or even where a draft is clear enough upon its face—a well-marked line upon the ground will prevail, although such line may not be in strict accordance with the draft.

Second. Where adjoining owners of land occupy and use up to a certain line—holding adversely the one against the other—for a period of twenty-one years, such adverse holding gives title by the statute of limitations; and where the land is arable, and where there is a fence or other well-defined line, and the land is occupied or cultivated or cleared, and a party openly and adversely claims the land up to such fence, or other well-defined line, with the knowledge of his adjoiner, and claiming it as against the world for twenty-one years, the law gives him the land up to such line. But as to woodland, and where the same is not inclosed, the matter of acquiring title by the statute is more difficult. In such case the rule is thus given: If a party defines his boundaries and takes actual possession of a part by clearing or cultivation, and uses the remainder as farmers usually do woodland by taking timber, etc., and does this adversely and exclusively for twenty-one years, the owner, in the meantime, not interfering, he gives title by the statute of limitations. But you will observe that the woodland is carried with the part cleared and cultivated, and not upon its own strength.

Again a party may be estopped or precluded by his having said or done something which he will not be permitted to deny, as against him who relied upon or was misled by such word or act. This brief outline of these principles of law will prepare you for what we may now say.

And first, then, I do not think there is enough in the evidence to give the plaintiff title by the statute of limitations, except as we shall presently refer to it. If these 8 acres were within the

plaintiff's deed and survey, he need not set up title by the statute of limitations. It was his by grant—a higher, and, perhaps, in one sense of the word, a more perfect, title than that which can be obtained by the statute; and yet title obtained by the statute of limitations is a good and sufficient title. If it was no part of the land he got by his deed, then it was separate, uninclosed woodland, and occasional acts of taking timber from it would not be such an adverse holding as the law requires in such case. But here, I may say, as well now as again, that if there was a well-defined line, and both these parties assented thereto, whether the land was cultivated, or cleared, or woodland, after a period of twenty-one years the law will make that the line. As to the line from the oak tree to the stone pile, there is no question but that it was well marked, and this left unexplained would indicate that such was the line. But this the defendant explains by showing, so far as he can, that General Murry first ran this line and marked it, but upon making his calculation discovered that it gave to Kuhns too much land, and that afterwards he went back and changed the line, as the defendant contends, from the evidence, so as to give each one an equal share. In this connection you will observe that the Murry drafts call for a post at either end of the line, and not for a white oak at one end and a stone pile at the other. And in addition, if the intention was to make an equal division of the land, giving to each 236 acres—and you may rely upon the testimony of surveyor Ferguson—the claim set up by the plaintiff would not be in accordance with such intention. He testifies that if Bowman retains the land in dispute, he would have, by his measurement, some 5 acres and some odd perches less than Kuhns; but if the disputed land were given to Kuhns, he would have 23 acres and 26 perches more than Bowman. The important question is where is the true line? Taking the Murry surveys together, they would give the land to Bowman as explained by the surveyors; but if that marked line is to prevail, then the land would go to Kuhns. Where did Murry finally fix the line? Did he leave the marked line as his survey, or did he connect this line afterwards, so as to equalize the land, and change it farther on the Kuhns side? You will determine this fact from all the evidence presented.

As to the estoppel set up. I do not think that from anything the defendant did he will be precluded from making a defense here, for perhaps two reasons: First. At the time, even if he

did all that is contended for, and established by the witnesses, he was not the owner of the land. I refer, now, to what oc-curred at the time of the survey by Mechling when they were bringing the land into partition.

But for another important reason the plaintiff had notice, at least sufficient to put himself on his guard before he took the land at the appraisement. It has been shown that Adam Bow-man gave notice that he was dissatisfied with the Mechling sur-vey, and that there were 10 acres more or less comprehended within that survey that belonged to the estate of old Jacob Kuhns; and this was notice, at least sufficient to put John Kuhns on his guard. He had not taken the land at that time; he had not paid any of his money at that time, and he had this notice.

You will take the whole of the evidence and consider it care-fully, and tender such verdict as the same will justify you, un-der the law, as given to you by the court. And unless there be some intervening cause, on the various branches of the case, and upon which we have commented, your verdict should be in support of what old Philip Kuhns has done.

The jury returned a verdict for the defendant, and a motion for a new trial was overruled by the court.

*Laird & Keenan* for plaintiff in error.

*Marchand & Gaither, Moorehead & Head* for defendants in error.

PER CURIAM:

There is nothing in the plaintiff's assignments of error which requires extended comment. Taking the deeds of Jacob Kuhns and Adam Bowman with the Murry drafts, neither the deed nor draft under which the plaintiff claims gave him the land which he claims, so that the marked line, found on the ground, was of no moment in the controversy. Such line, when called for by a deed or survey, is conclusive; but when not called for, it goes for nothing. Why should the plaintiff be allowed to adopt a line called for neither by his deed nor the draft from which it was made? The proposition is preposterous. Obviously the line in controversy was but experimental, and was not adopted by the grantor of the contestants. The questions involving the statute of limitations were properly ruled as were those concern-ing evidence.

The judgment is affirmed.